234 A.2d 667.

JACINTHO MELLO *et ux vs.* COY REAL ESTATE Co. *et al.*

NOVEMBER 6, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

76

KELLEHER, J. This is an action of assumpsit to recover money damages incurred by the plaintiffs as a result of the defendants' failure to carry out an alleged agreement to sell certain real estate to the plaintiffs. It was heard in the superior court by a justice thereof, sitting without a jury, who rendered a decision for one of the defendants and awarded the plaintiffs the sum of $50 against the other defendant. Thereafter the plaintiffs duly prosecuted their bill of exceptions to this court. Since they have briefed and argued only their exception to the decision, the other exception is deemed to be waived.

While the evidence given in this case by the various parties was in many respects contradictory, it is possible to set forth the various transactions which gave rise to this litigation. On September 5, 1945, plaintiffs agreed with defendant realty company, through its president and treasurer Edward B. Coy, to purchase a parcel of real estate located in Westerly. The property was owned by the realty company and defendant Mary Elizabeth Welch as tenants in common. This agreement was evidenced by a written memorandum which was delivered to plaintiffs as a receipt for a $50 deposit they gave to Coy. It reads as follows:

"Sep 5 — 1945

"Received of Jacintho B. & Eleanor Mello Fifty # .............................................................Dollars Deposit for purchase of land between Old and New Post Roads, owned by Coy R. E. Co & Elizabeth Welch. Balance due on delivery of deed $950.00

"$50.00            Coy Real Estate Co. Agts
[signed] E B Coy"

It was agreed that no transfer could take place until the estate of defendant Welch's mother, who was her daughter's predecessor in title, was closed and the title to this half interest perfected. The estate, however, was not closed until four years later.

The defendant Welch testified that during this period she spent little time in Westerly as she taught school in New York; that defendant realty company at no time was authorized by her to sell this property to plaintiffs for the sum set forth in the agreement; that while defendant realty company had previously sold one other parcel of real estate for her, it had received her prior approval before any agreement had been executed; and that she did not know plaintiffs. The plaintiff Jacintho Mello corroborated this last statement and stated that he had never met defendant Welch.

The attorney for defendant realty company during this time was a witness. In his testimony he stated that, after informing plaintiffs of defendant Welch's unwillingness to concur in the desired sale, he, on behalf of the realty company, agreed with plaintiffs to make an effort to arrange the purchase by his client of the outstanding Welch half interest. If this were accomplished, the realty company would then execute and deliver to plaintiffs a proper deed in conformity with the original understanding of September 5, 1945. It was further understood that if he were unsuccessful in his negotiations with Welch, the $50 tendered by plaintiffs would be returned and any and all obligations incurred pursuant to the earlier agreement would cease. The attorney testified that he was unable in his attempt to acquire the half interest of defendant Welch. While plaintiffs deny this portion of the testimony, the record shows that on November 25, 1950, the realty company conveyed its interest to defendant Welch and on the same day its attorney tendered a check in the amount of $50 to plaintiff Jacintho. The plaintiffs never cashed the check and it is an exhibit in this case.

In his decision, the trial justice first ruled that defendant Welch had never authorized defendant realty company to represent her in any negotiations it had with plaintiffs and

he then found that defendant realty company and plaintiffs did enter into a second agreement relative to the property which extinguished the first agreement of September 5, 1945, and any liability of the realty company thereunder. The plaintiffs in their appeal take issue with these findings.

## I

### Defendant Welch

In finding for this defendant the trial justice remarked on the almost complete lack of testimony that the realty company was ever authorized to sell the Welch interest in the subject property. The plaintiffs, however, alleged in their amended declaration that the September 5, 1945 memorandum was signed by defendant realty company as the agent for Welch. The burden of proving such an agency was upon them. *H. W. Ellis, Inc.* v. *Alofsin*, 87 R. I. 252, 140 A.2d 131. We reiterate here what we held in *Furlong* v. *Donhals, Inc.*, 87 R. I. 46, 137 A.2d 734. In cases where the existence of a principal-agent relationship is alleged and in issue, it is generally held that extrajudicial statements and declarations sought to be attributed to the purported agent are inadmissible to prove the agency under the hearsay rule. 3 Am. Jur.2d, Agency, §354, p. 711. We also pointed out in *Furlong* that an agency cannot be established by acts of a professed agent unless the acts are of such a character and so continuous as to justify a reasonable inference that the principal had knowledge of them.

We have reviewed the record in the light of the law of agency set forth above. In so doing we point to our longstanding rule that where parties submit their case on law and facts to a trial justice sitting without a jury, his findings are entitled to great weight and will not be disturbed by this court unless they are clearly wrong. *Abilheira* v. *Faria*, 102 R. I. 214, 229 A.2d 758. We find no error in the ruling of the trial justice for defendant Welch.

## II

## Defendant Coy Real Estate Co.

While plaintiffs contend that the trial justice's finding of a second agreement between them and the realty company is contrary to the evidence, they place particular emphasis that this portion of the decision is against the law. If there was in fact a new agreement, plaintiffs describe it as a novation.[1] Accordingly, they point to our holding in *New England Doll & Novelty Co.* v. *DelDio,* 95 R. I. 450, 187 A.2d 781, wherein this court ruled that a novation is an affirmative defense which must be pleaded specially with the burden on the pleader to prove the existence of the new contract by a fair preponderance of the evidence. No such plea being in the record of this case, plaintiffs state that the decision in the realty company's behalf has no validity.

The plaintiffs declare that although this defendant filed a plea of an account stated, it does not encompass a plea of novation, substituted contract or accord and satisfaction. They assert that when the trial justice ruled in favor of the realty company on the basis of the plea of an account stated,[2] he misconceived the distinction between these enu-

---

[1] A "novation" is generally defined as a substitution of a new contract between the same or different parties which extinguishes the former agreement. Black, Law Dictionary (4th ed.), p. 1212. By usual custom, the term is frequently employed by courts in cases where the new agreement involves a substitution of a third party in place of an original contractual party; whereas, also by custom, the term "substituted contract" is more often used by courts where no new parties are introduced. 6 Corbin, Contracts, §1293, at 190. While we recognize and honor this distinction, for purposes of this opinion we do not feel it necessary to so distinguish the terms; accordingly, they are used interchangeably in succeeding paragraphs.

[2] That portion of the trial justice's decision pertinent to the issue raised is as follows:

"* * * I therefore feel that the defendant has sustained the burden of proof of what amounts to a — well, he calls it in his plea an account stated. It may be accord and satisfaction, or novation; whatever it is, it's a new contract, and there's enough said for it in the plea to sustain

merated defenses and therefore his decision cannot stand. They also argue that a decision premised on a defense not contained in the pleadings constitutes a material variance between the pleadings and the proof which requires a reversal of the action of the superior court. The plaintiffs further allege that it was inconceivable for them to anticipate that the trial justice would support his opinion by a theory wholly beyond the pale of the pleadings.

This appeal antedates by a considerable period of time the advent of the new rules of civil procedure of the superior court.[3] Accordingly we shall, where necessary, dispose of the issues presented herein by recourse to the former rules of civil procedure of the superior court.

We concur in plaintiffs' assertion that an account stated, precisely defined, does not include a plea of accord and satisfaction or one of novation. There are differences and distinctions to be observed in the use of these pleas. An account stated is merely a striking of a balance by an arithmetical computation of debits and credits resulting from a running account between the parties and followed thereafter by an expressed or tacit promise by one, found to be indebted to the other, to pay the agreed balance determined to be owed. See 6 Corbin, Contracts, chap. 72, §1303 et seq. It is to be noted also that as we have defined the term, an account stated does not operate as an automatic discharge of the debt previously existing between the parties. On the other hand, the theories of both accord and satisfaction and novation, the dissimilarities of which are of no concern here, operate to discharge all the rights and obligations ema-

---

it, and I'm inclined to think, and to find that the — therefore, that this new contract took the place of the other, and absolved the defendant Coy Real Estate Company from damages generally."

[3]The writ in the present case was filed in the superior court in January 1952 and after innumerable hearings on preliminary pleadings, the trial was held in November 1959.

nating from a prior agreement. *Priest* v. *Oehler,* 328 Mo. 590, 41 S.W.2d 783; 6 Corbin, Contracts, §1293, p. 185.

The language used by the trial justice in his decision plainly indicates his uncertainty as to two points; first, whether his finding of a new contract between the parties should be classified as a novation or an accord and satisfaction; second, whether an account stated is a plea sufficient in scope to include therein a substituted contract. What is not in doubt, however, is that the trial justice found to his satisfaction that defendant realty company had proven by a preponderance of the evidence that a new contract was born of the litigants which superseded and extinguished the former contract.

Hence it is clear from a consideration of the principles set forth and elucidated herein that the trial justice's ruling —that the parties to this phase of the appeal entered into a substitute agreement which preempted the earlier 1945 agreement—could not be based solely on defendant's plea of an account stated. While we must agree with plaintiffs' contention that the account stated was a wrong plea, we find nonetheless, for reasons set forth below, that while we fault the trial justice's reliance on defendant's plea of an account stated, his decision should be affirmed.

We recognize that under the former rules of practice of the superior court a material variance between a plea and the proof adduced at trial could be fatal to the pleader— even when the issue was raised for the first time on appeal to us. We so ruled in *Ferla* v. *Rotella,* 92 R. I. 460, 463, 169 A.2d 906, 170 A.2d 622. There appear, however, in the instant record, certain facts which bring this case outside the scope of our holding in *Ferla.*

Prior to the actual trial of this case, the attorneys participated in a pretrial conference pursuant to rule 18 of the rules which then governed the practice before the superior court. The purposes of such a conference are plainly out-

lined in the body of the rule as follows:

"Rule No. 18

"Pre-Trial Conference

"In any civil action or proceeding the Court may in its discretion direct the attorneys for the parties to appear before it in chambers or otherwise for a conference to consider:

"(1) The simplification of the issues, both of law and fact;

"(2) The necessity or desirability of amendments to the pleadings;

"(3) The possibility of obtaining admissions of fact and of documents at the trial which will avoid unnecessary proof and unnecessary expense;

"(4) The limitation of the number of expert witnesses;

"(5) Such other matters as may aid in the disposition of the action or proceeding.

"The Court shall thereupon make an order which recites the action taken at the conference which shall limit the issues for trial to those not disposed of by admissions or agreements of counsel. This order shall control the subsequent course of the action or proceeding unless modified at the trial to prevent manifest injustice. * * *"

After his meeting with counsel for the parties to this action, the trial justice issued a pretrial order which, as the rule prescribes, would "control the subsequent course of the action or proceeding unless modified at the trial to prevent manifest injustice." The principal purpose of the order, as this court pointed out in *New York, N. H. & H. R.R.* v. *Superior Court,* 83 R. I. 292, 115 A.2d 534, is to simplify procedure, expedite litigation, and avoid unnecessary expense. Embodied in the pretrial order of this particular case, among other things, was a list of the issues that were proposed to be presented and determined at trial. The last such issue articulated in the order reads as follows:

"That in addition to the above [issues], the defendants claim that the issue is presented as to whether after the alleged contract was entered into the parties did not mutually agree to cancel the same and all obligations thereunder."

It is our opinion that the listing of this issue in the pretrial order has a significant bearing on this case. Its inclusion substantially weakens plaintiffs' argument that the trial justice ruled on a defense not properly before the court. It is clear from the presence of this issue in the order that plaintiffs were on notice that a substituted contract was being employed as a defense, notwithstanding it was not properly pleaded by defendant.

We note a conspicuous absence in the record of any objection taken by plaintiffs when defendant at the trial introduced evidence on this issue. The record is also significantly silent of any reservation or objection by plaintiffs to the incorporating of this issue in the pretrial order. If anything, the record considered and taken as a whole savors of acquiescence by plaintiffs of the inclusion of the issue of a substituted contract for trial purposes.

If there has been a variance in the pleading to the proof, it has been one of shadow, not substance. The pretrial order, in our opinion, is by its very nature such an integral link in our judicial process between the pleading and the trial stages of a law suit that it should be deemed to cure any technically deficient pleadings insofar as they may fail to raise a given issue which is plainly set forth in the order. The rule calling for a pretrial order was promulgated to assist in the fair disposition of issues by affording an opportunity for the litigants through their attorneys to confer with the trial justice for the specific purposes of narrowing the areas of contention. We believe that an allowance of a pretrial order to correct any formal defects in the pleadings is entirely consonant with the standards of fair play and substantial justice so essential to our adversary system

of jurisprudence. We can perceive no hardship, prejudice or surprise being suffered by plaintiffs when the decision of the trial justice was based upon an issue specified in the pretrial order and extensive testimony by all parties was taken thereon without objection. We therefore are not persuaded by plaintiffs' argument that the trial justice's decision as it applies to the realty company is against the law.

There is little merit in the plaintiffs' assertion that the superior court's decision is against the weight of the evidence. We point to our well-settled rule that if parties submit their litigation for determination by a trial justice sitting without a jury, the findings upon which his decision is based will not be disturbed unless clearly wrong. We have reviewed the record, as it appears to both the defendants, and in adhering to our rule, we affirm the decision of the trial justice in his finding for the defendant Welch and awarding the plaintiffs the sum of $50 as being owed them by the defendant realty company.

The plaintiffs' exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Cappuccio & Cappuccio; Louis B. Cappuccio and Frank S. Cappuccio,* for plaintiffs.

*James D. Thornton,* (Attorney for Coy Real Estate Company), *Harold B. Soloveitzik, Matthew L. Lewiss,* (Attorneys for Mary Elizabeth Welch Connell), for defendants.